UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
MARY E. CHAMBERS,                   )
                                    )
            Plaintiff,              )
                                    )
    v.                              )   Civil Action No. 15-1458 (RBW)
                                    )
DISTRICT OF COLUMBIA, et al.,       )
                                    )
            Defendants.             )
                                    )
_____)

**ORDER**

      The plaintiff, Mary E. Chambers, brings this civil action against the District of Columbia ("District")[1] and the American Federation of State, County and Municipal Employees ("AFSCME") District Council 20 and Local 2401, AFL–CIO ("Union Defendants").[2] Complaint ("Compl.") at 1. In regards to the District, the plaintiff first alleges that she was discriminated against based on her sex, retaliated against for filing complaints with the Equal Employment Opportunity Commission ("EEOC"), and subjected to a hostile work environment,

---

[1] The Complaint also names as defendants the District of Columbia Office of the Attorney General ("OAG") and Karl Racine, the District of Columbia Attorney General. Compl. at 1. The District asserts in its motion that the "OAG should be dismissed because . . . 'bodies within the District of Columbia government are not suable as separate entities.'" Memorandum of Points and Authorities in Support of [the District's] Motion to Dismiss [] at 4 (quoting Braxton v. Nat'l Capital Hous. Auth., 396 A.2d 215, 216 (D.C. 1978)); see also Sheller-Paire v. Gray, 888 F. Supp. 2d 34, 37–38 (D.D.C. 2012) ("[T]he OAG . . . [is] 'non sui juris' and must be dismissed from this case." (citation omitted)). Furthermore, because the "[p]laintiff's allegations do not in any way suggest that the [Attorney General] was personally involved in the alleged misconduct . . . , [a]nd suing a municipal official in his official capacity is the equivalent of suing the municipality itself because the official is not personally liable for damages," the Court "will construe [the] plaintiff's suit against the [Attorney General] as a suit against the District of Columbia." Id. (citations omitted).

[2] The plaintiff also named as a defendant the American Federation of State, County and Municipal Employees, International Union, AFL-CIO. See Compl. at 1. The plaintiff and this defendant "have hereby agreed to consent to the dismissal of this lawsuit against" this defendant. Consent Motion to Dismiss Defendant American Federation of State, County and Municipal Employees, International Union, AFL–CIO from Complaint at 1. Accordingly, this consent motion will be granted, and the claims against this defendant are dismissed.

all in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e–2 to –17 (2012). Id. ¶¶ 9–12. Second, the plaintiff alleges that she was discriminated against because of a disability, in violation of the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. §§ 12101–12213 (2012). Id. Third, the plaintiff alleges that she was discriminated against because of her age, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. §§ 621–664 (2012). Id. Finally, the plaintiff alleges that her request for leave under the Family Medical Leave Act of 1993 ("FMLA"), as amended, 29 U.S.C. §§ 2601, 2611–2619, 2631–2636, 1651–1654 (2012), was improperly denied. Id.

As to the Union Defendants, the plaintiff alleges that they failed to represent her properly in her discrimination claims against the District, id. ¶¶ 16–17, and improperly removed her from her position as Shop Steward, id. The plaintiff also alleges that the Union Defendants discriminated against her based on her age and purported disability, in violation of the ADEA and ADA respectively, and retaliated against her for prior EEO activity in violation of Title VII. Id.

Currently before the Court are the [Union Defendants'] Motion to Dismiss ("Unions' Mot."), and the [District's] Motion to Dismiss [] ("Dist.'s Mot."). Upon careful consideration of the parties' submissions, the Court concludes that it must grant both motions and dismiss the plaintiff's Complaint.[3]

---

[3] In addition to the filings previously referenced, the Court considered the following submissions in rendering its decision: (1) Defendants American Federation of State, County and Municipal Employees, District Council 20 and Local 2401, AFL–CIO's Memorandum of Law in Support of their Motion to Dismiss ("Unions' Mem."); (2) Plaintiff Mary E. Chambers' Memorandum in Opposition to Defendants American Federation of State, County and Municipal Employees, District Council 20 and Local 2401 [Motion to Dismiss] ("Pl.'s Opp'n to Unions' Mot."); (3) Defendants American Federation of State, County and Municipal Employees, District Council 20 and Local 2401, AFL-CIO's Reply to Plaintiff's Opposition to their Motion to Dismiss ("Unions' Reply"); (4) the Memorandum of Points and Authorities in Support of [the District] Defendants['] Motion to Dismiss [] ("Dist.'s Mem."); (5) Plaintiff
(continued . . . )

I.    BACKGROUND

The plaintiff, who was fifty-two years old at the time she filed her initial Charges of Discrimination that form the basis of this litigation, See Pl.'s Opp'n to Unions' Mot., Exhibit ("Ex.") 1 (Charge of Discrimination) (noting that the plaintiff's date of birth is September 10, 1962), is employed at the District's Office of the Attorney General ("OAG") in a Support Enforcement position in the Child Support Services Division, Compl. ¶ 13.  She alleges that in 2010, prior to the events leading to this litigation, she filed a complaint with the EEOC against the District alleging a "violation of Title VII."  Compl. ¶ 11.

The plaintiff now claims that from 2014 to the present, id. ¶ 13, the District has "discriminated against her based on her sex [and] disability," that it has "creat[ed] a hostile work environment," and has "harass[ed] and intimidat[ed]" her, in violation of Title VII, id. ¶ 12. Furthermore, the plaintiff alleges that the District violated the ADA and retaliated against her "because she opposed [the OAG's] discriminatory employment practices of failing and refusing to properly process her request for [leave under the FMLA], and willfully failing and refusing to properly process her salary payments in retaliation for her having filed previous charges of employment discrimination [with the EEOC]."  Id.  To support these claims, the plaintiff states that the District "refus[ed] to correctly record the number of hours she was entitled to be paid for each pay period."  Id. ¶ 13.  Moreover, the plaintiff alleges that she provided the District "with medical certificates from her physicians" regarding her "medical problems," and that the District "just failed and refused to take any action on the leave request," despite the District claiming it could not read the certificates.  Id.  The plaintiff alleges that after she suffered a "minor stroke,"

---

( . . . continued)
Mary E. Chambers' Memorandum in Opposition to Defendants District of Columbia's Motion to Dismiss [] ("Pl.'s Opp'n to Dist.'s Mot."); and (6) the [District] Defendants' Reply to Plaintiff's Opposition to the Motion to Dismiss [] ("Dist.'s Reply").

her requests to "transfer to another office" or "work from home" were improperly denied. Id. ¶ 15. The plaintiff also suggests that the District "willfully failed and refused to properly credit . . . voluntary [leave] donations to [the plaintiff's] account." Id. ¶ 14.

In connection to these claims against the District, the plaintiff also alleges that the Union Defendants failed to properly represent her and "file grievances on her behalf," but instead removed her from her position within the Union as Shop Steward. Id. ¶ 17. She believes that these actions were designed to "deprive [her] of her right to representation as a member of the bargaining unit because she filed charges of discrimination against [the District] and . . . against [the Union Defendants]." Id. Moreover, allegedly based upon "certain information provided to her," the plaintiff "believes" that the Union Defendants "have an age animus against individuals over the age of 40 years, and a disability animus over individuals with a disability." Id. ¶ 18. For this reason, the plaintiff alleges that she was denied relief for a grievance filed with the Union Defendants, even though other employees received relief. Id.

## II.  STANDARDS OF REVIEW

A 12(b)(1) motion presents "a threshold challenge to the [C]ourt's jurisdiction." Morrow v. United States, 723 F. Supp. 2d 71, 75 (D.D.C. 2010) (Walton, J.) (quoting Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987)). While the court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting [the] plaintiff the benefit of all inferences that can be derived from the facts alleged,'" Am. Nat'l Ins. Co. v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting Thomas v. Principi, 394 F.3d 970, 972 (D.C. Cir. 2005)), the plaintiff nonetheless bears the burden of establishing by a preponderance of the evidence that the court has subject matter jurisdiction, Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). Accordingly, "the [p]laintiff's factual allegations in the complaint . . . will

4

bear closer scrutiny in resolving [a 12(b)(1) motion]." Grand Lodge of the Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13–14 (D.D.C. 2001). Moreover, in resolving a Rule 12(b)(1) motion, "the court need not limit itself to the allegations of the complaint." Id. at 14. Instead, "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction [in] the case." Scolaro v. D.C. Bd. of Elections & Ethics, 104 F. Supp. 2d 18, 22 (D.D.C. 2000).

A Rule 12(b)(6) motion, on the other hand, tests whether a complaint "state[s] a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). While the Court must "assume [the] veracity" of any "well-pleaded factual allegations" in a complaint, conclusory allegations "are not entitled to the assumption of truth." Id. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 663 (citing Twombly, 550 U.S. at 555). "In determining whether a complaint states a claim, the court may consider the facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice." Abhe & Svoboda, Inc. v. Chao, 508 F.3d 1052, 1059 (D.C. Cir. 2007) (citation omitted).

### III.   ANALYSIS

#### A. The District's Motion to Dismiss

The District seeks dismissal of the complaint pursuant to Rule 12(b)(6), arguing that the plaintiff "fails to state any clear facts from which a cause of action could arise, speculative or otherwise." Dist.'s Mem. at 4. Taking into consideration the allegations set forth in the plaintiff's Complaint, the Court agrees and is unable to discern a factual predicate for any of the plaintiff's claims against the District. For the reasons set forth below, the Court shall grant the District's motion to dismiss in its entirety.

##### 1.   The Plaintiff's Allegations of Discrete Sex Discrimination Under Title VII

Under Title VII, it is an "unlawful employment practice for an employer . . . to discharge an individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of an individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Although "an employment discrimination plaintiff is not required to plead every fact necessary to establish a prima facie case [of discrimination] to survive a [Rule 12(b)(6)] motion to dismiss," Jones v. Air Line Pilots Ass'n, 642 F.3d 1100, 1104 (D.C. Cir. 2011), the plaintiff must nevertheless "plead sufficient facts to show a plausible entitlement to relief," Rodriguez v. Donovan, 922 F. Supp. 2d 11, 17 (D.D.C. 2013). "[T]he two essential elements of a [Title VII] discrimination claim are that (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's race, color, religion, sex, [or] national origin . . . ." Baloch v. Kemphthorne, 550 F.3d 1191, 1196 (D.C. Cir. 2008).

Here, while the plaintiff advances a number of conclusory assertions of sex discrimination, she fails to allege any facts that resemble an adverse employment action based on

her sex.  "An adverse employment action [is] 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significant different responsibilities, or a decision causing significant change in benefits.'"  Douglas v. Donovan, 559 F.3d 549, 552 (D.C. Cir. 2009) (citations omitted).  "An employee must 'experience[] materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm.'"  Id. (quoting Forkkio v. Powell, 306 F.3d 1127, 1131 (D.C. Cir. 2002)).  Being unable to discern a factual predicate for the plaintiff's Title VII sex discrimination claim against the District from the allegations contained in her Complaint, the Court must dismiss this claim.

### 2.  The Plaintiff's Title VII Hostile Work Environment Claim

To state a claim of a hostile work environment under Title VII, a plaintiff must allege "'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the [plaintiff]'s employment and create an abusive work environment.'"  Baloch, 550 F.3d at 1201 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)).  In evaluating a plaintiff's allegations of discrimination, courts must consider the totality of circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  Harris, 510 U.S. at 23; see also Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) ("These standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a general civility code.  Properly applied, they will filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." (internal citations omitted)).  "Except in extreme circumstances, courts have refused to hold that one

7

incident is so severe to constitute a hostile work environment. Even a few isolated incidents of offensive conduct do not amount to actionable harassment." Stewart v. Evans, 275 F.3d 1126, 1134 (D.C. Cir. 2002) (citations omitted).

Here, the plaintiff contends that the District created a hostile work environment when it "willfully failed and refused to properly process [her] pay check by refusing to correctly record the number of hours she was entitled to be paid for each pay period," denied the plaintiff's request "to be placed on Advance Leave or Leave Without Pay because of her medical problems," "willfully failed and refused to properly credit . . . voluntary donations to [the plaintiff's] account," and denied the plaintiff's requests "to be transferred to another office." Compl. ¶¶ 13–15. But even if the Court were to assume that these allegations rose to the level of severity necessary to establish a hostile work environment claim, the plaintiff "fails to connect . . . [her] unpleasant experiences . . . with [her] protected status" under Title VII. Lawson v. Pepco, 721 F. Supp. 2d 1, 6 (D.D.C. 2010). And where a plaintiff fails to make such a connection, "any claim based on [the challenged] events must be dismissed." Id. (citing Roberson v. Snow, 404 F.Supp.2d 79, 96–97 (D.D.C.2005)) (dismissing a hostile work environment claim for failure to state a claim).

### 3. The Plaintiff's Title VII Retaliation Claim

Title VII also makes it unlawful "for an employer to discriminate against any of [its] employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII], or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). To plead an unlawful retaliation claim sufficient to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege sufficient facts from which it can be reasonably inferred that:

(1) she engaged in protected activity opposing discrimination; (2) she suffered a materially adverse employment action by her employer; and (3) there was "a causal link between the protected activity and the adverse action." Hamilton v. Geithner, 666 F.3d 1344, 1357 (D.C. Cir. 2012) (citations omitted). As another member of this Court noted,

> there is a difference between "adverse actions" that support a claim for discrimination and "materially adverse actions" that support a claim for retaliation. Unlike discriminatory actions, retaliatory actions need not be employment-related or even occur in the workplace, nor must they result in "a materially adverse change in the terms or conditions of one's employment." Nonetheless, the alleged retaliatory action must produce "an injury or harm." The injury or harm must be "material," meaning that it could "dissuade a reasonable worker from making or supporting a charge of discrimination."

Nurriddin v. Boldin, 40 F. Supp. 3d 104, 116 (D.D.C. 2014) (internal citations and alterations omitted); see also Baloch, 550 F.3d at 1198 n.4 ("Adverse actions in the retaliation context encompass a broader sweep of actions than those in a pure discrimination claim.").

The plaintiff's complaint, which consists largely of conclusory allegations, asserts that, "immediately after she filed [a] charge of discrimination[,] No. 570–2010–01668, [the] District . . . commenced various employment actions . . . which were designed to . . . retaliate against her." Compl. ¶ 13. But superficial assertions that a defendant "initiated several adverse actions against her in retaliation," without sufficient specificity to conclude that the alleged actions in question "rose to the level of materially adverse employment actions mandated by the Supreme Court for recovery under a Title VII retaliation claim," "simply cannot meet the Iqbal standard set out above." Wheeler v. Georgetown Univ. Hosp., 788 F. Supp. 2d 1, 4 (D.D.C. 2011).

The plaintiff offers only two specific factual allegations that could be construed as an adverse action: (1) that "beginning on February 24, 2014[,] . . . [the] District . . . willfully failed and refused to properly process [the plaintiff]'s pay check"; and (2) that "on March 4, 2014, [the plaintiff] requested . . . to be placed on Advance Leave or Leave Without Pay because of her

9

medical problems" but the District "just failed and refused to take any action on the leave request." Compl. ¶ 13. Even if the Court were to assume that these assertions sufficiently allege materially adverse employment actions, there is nothing in the plaintiff's Complaint that establishes a direct causal link between these purported adverse actions and her prior EEO activity. See generally Compl.

While the Court appreciates that in the absence of direct evidence of a causal connection, a plaintiff "may raise a presumption of causation by showing that the employer had knowledge of the protected activity and that the adverse action occurred soon thereafter," Vance v. Chao, 496 F. Supp. 2d 182, 186 (D.D.C. 2007) (citing Mitchell v. Baldrige, 759 F.2d 80, 86 (D.C. Cir. 1985)), "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close,'" Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273–74 (2001) (citing cases holding that a gap of three or four months between the protected activity and the alleged adverse action was "insufficient"). Thus, "Courts of this Circuit have generally accepted time periods of a few days up to a few months" as sufficient, Payne v. Salazar, 899 F. Supp. 2d 42, 58 (D.D.C. 2012), and have concluded that six months is at "the outer edge of acceptable temporal proximity," Dudley v. Wash. Metro. Area Transit Auth., 924 F. Supp. 2d 141, 179 (D.D.C. 2013); see also Taylor v. Solis, 571 F.3d 1313, 1322 (D.C. Cir. 2009) ("[A]n inference of retaliatory motive based upon the 'mere proximity' in time" would be "untenable" where the adverse action occurred two and a half months after protected activity.).

Here, the prior EEO activity which the plaintiff contends prompted the alleged retaliation occurred in 2010, approximately four years before the purported retaliation, see Dist. Mot., Ex. 1

10

(Charge of Discrimination) at 1, and the EEOC issued its final determination in April 2012, approximately two years before the alleged retaliation, see Dist. Mot., Ex. 2 (Dismissal and Notice of Rights) at 1. The Court therefore rejects the plaintiff's characterization that the retaliation occurred "immediately" after the protected EEO activity. Accordingly, the Court must dismiss the plaintiff's retaliation claim because "[t]he Court cannot infer retaliation from temporal proximity, and [the plaintiff] has provided no direct evidence of retaliation." Dudley, 924 F. Supp. 2d at 181.

### 4. The Plaintiff's Claim of Discrimination Based Upon an Alleged Disability

The ADA makes it unlawful for an employer to "discriminate against a qualified individual on the basis of a disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Discrimination under the ADA includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee." Id. § 12112(b)(5)(a). "An individual seeking to establish a disability must prove, by a preponderance of the evidence that: (1) she suffers from physical or mental impairment; (2) the impairment relates to a 'major life activity'; and that (3) the impairment 'substantially limits' her in one or more 'major life activities.'" Singh v. George Washington Univ. Sch. of Med. & Health Scis., 667 F.3d 1, 4 (D.C. Cir. 2011) (internal citations omitted).

Here, the plaintiff's Complaint fails to include any facts or information suggesting she is disabled as defined by the ADA. The plaintiff alleges that she "suffered a medical disability" in the form of a "minor stroke." Compl. ¶¶ 14–15. However, this statement, alone, is insufficient to establish that the plaintiff necessarily suffered from a qualifying disability. Puckett v.

McFillips Shinbaum, No. 2:06–cv–1148, 2008 WL 906569, at *19 (M.D. Ala. Mar. 31, 2008) ("The problem with [the plaintiff]'s claims is that he has not presented any evidence that his physical illness—which includes kidney removal, gastrointestinal problems, a stroke and prostate cancer—restricted in any manner his ability to perform his job . . . ." (emphasis added)). Indeed, the plaintiff fails to offer any factual assertions in her Complaint that would suggest that her stroke substantially limited her ability to perform one or more major life activities. "[H]aving 'failed to allege facts sufficient to support a claim that [s]he is substantially limited in a major life activity,' [the plaintiff]'s ADA claim cannot survive a motion to dismiss." Massaquoi v. District of Columbia, 81 F. Supp. 3d 44, 55 (D.D.C. 2015) (quoting Sheller-Paire, 888 F. Supp. 2d 34, 42 (D.D.C. 2012)).

### 5. The Plaintiff's Claim of Age Discrimination Under the ADEA

The ADEA makes it "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1) (emphasis added). Under the ADEA, "the two essential elements of a discrimination claim are that (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's . . . age . . . ." Baloch, 550 F.3d at 1196 (citations omitted); see also Mianegaz v. Hyatt Corp., 319 F. Supp. 2d 13, 19 (D.D.C. 2004) ("To establish a prima facie case of age discrimination, the plaintiff must show that: (1) [s]he is a member of the ADEA's protected class of persons over forty years of age; (2) [s]he was qualified for his position and was performing h[er] job well enough to meet h[er] employer's legitimate expectations; (3) [s]he suffered an adverse employment action despite h[er] qualifications and performance; and (4) [s]he was

disadvantaged in favor of similarly situated younger employees." (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000)).

The Complaint is devoid of any factual assertions or discussion regarding any purported adverse employment action taken by the District because of the plaintiff's age, and therefore this claim must be dismissed. E.g., Blackwell v. SecTek, Inc., 61 F. Supp. 3d 149, 161 (D.D.C. 2014) ("[The plaintiff] has also failed to allege an adverse employment action under the ADEA. Therefore, his ADEA claim must also fail."). And even if the Court were to assume that the purported adverse employment actions alleged in support of the plaintiff's other discrimination claims were also offered in support of the plaintiff's ADEA claim, the plaintiff "has failed to allege that [her] age was a but-for cause of any of the potential adverse employment actions, and [her] ADEA claim must be dismissed for this reason as well." Id. at 162.

### 6. The Plaintiff's Claim of Discrimination Under the FMLA

"The [FMLA] requires a covered employer to give an 'eligible employee' twelve weeks of leave during any twelve-month period '[b]ecause of a serious health condition that makes the employee unable to perform' h[er] job." Davis v. George Washington Univ., 26 F. Supp. 3d 103, 124 (D.D.C. 2014) (quoting 29 U.S.C. § 2612(a)(1)(D)). As another member of this Court has explained:

> In order to state a claim under [the FMLA] . . . , [a] plaintiff must first show that she qualifies as an "eligible employee" under the FMLA. That means that in order to survive [a] defendants' motion to dismiss, [a] plaintiff's complaint must contain sufficient factual matter to allow for an inference that she "has been employed (i) for at least 12 months by the employer with respect to whom leave is requested . . . and (ii) for at least 1,250 hours of service with such employer during the previous 12–month period."

Ghawanmeh v. Islamic Saudi Acad., 672 F. Supp. 2d 3, 14 (D.D.C. 2009) (quoting 29 U.S.C. § 2611(2)(A)); see also id. at 14 n.4 ("An employee must qualify as an 'eligible employee' under the FMLA before he or she can enforce the rights provided by the statute." (citation omitted)).

13

The District asserts in its motion that the "[p]laintiff does not allege that she was an eligible employee, having been employed for at least 1,250 hours of service during the 12-month period preceding the leave." Dist. Mem. at 5. Indeed, the Complaint is devoid of any such assertions, and therefore, this claim must be dismissed. Ghawanmeh, 672 F. Supp. 2d at 14 (The "[p]laintiff fails to makes any mention whatsoever of her status as an 'eligible employee' under the FMLA. [The] [d]efendants' motion to dismiss this count will therefore be granted." (citations omitted)).[4]

## B. The Union Defendants' Motion to Dismiss

### 1. The Plaintiff's Breach of Duty of Fair Representation and Standard of Conduct Violations Claim

The plaintiff alleges that she "notified [the Union Defendants] of [the District]'s denials of her request for leave audits, voluntary leave donations, [and FMLA] requests to work from home," Compl. ¶ 16, but that the Unions failed to represent her or "file grievances on her behalf," id. She also alleges that the Union Defendants "conspired to deprive [her] of her right to representation as a member of the bargaining unit." Id. ¶ 17. Furthermore, the plaintiff alleges that the Union Defendants improperly removed her from her position as a shop steward within the Union. Id. To the extent that the plaintiff has asserted breaches of the Union Defendants' duty of fair representation and standards of conduct, the claims must be dismissed for lack of jurisdiction.

"[C]ertain District of Columbia employees are granted rights to union representation and collective bargaining under the Comprehensive Merit Personnel Act (["]CMPA["])." Younger v.

---

[4] The plaintiff does not dispute the District's position in her opposition to the District's motion to dismiss, and therefore, the Court also considers the argument conceded. See Lewis v. District of Columbia, No. 10–5275, 2011 WL 321711, at *1 (D.C. Cir. Feb. 2, 2011) (per curiam) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." (citation omitted)).

14

D.C. Pub. Sch., 60 F. Supp. 3d 130, 139 (D.D.C. 2014) (citation omitted). "The CMPA provides that public sector unions owe D.C. employees a duty of fair representation by making a union's breach of its duty of fair representation an unfair labor practice . . . ." Id.; see also id. ("A union breaches the duty of fair representation when it acts in bad faith with respect to its members, or when its conduct is arbitrary or discriminatory."). The CMPA's Standards of Conduct also require unions to maintain

> democratic provisions for periodic elections to be conducted subject to recognized safeguards and provisions defining and securing the right of individual members to participate in the affairs of the organization, to fair and equal treatment under the governing rules of the organization, and to fair process in disciplinary proceedings.

D.C. Code § 1-617.03(a)(1).

"With few exceptions, the CMPA is the exclusive remedy for a District of Columbia public employee who has a work-related complaint of any kind." Robinson v. District of Columbia, 748 A.2d 409, 411 (D.C. 2000) (citing Stockard v. Moss, 706 A.2d 561, 564 (D.C. 1997)). The CMPA "create[s] a mechanism for addressing virtually every conceivable personnel issue among the District, its employees, and their unions—with a reviewing role for the courts as a last resort, not a supplementary role for the courts as an alternative forum." District of Columbia v. Thompson, 593 A.2d 621, 634 (D.C. 1991), modifying, 570 A.2d 277 (D.C. 1990), cert. denied, 502 U.S. 942 (1991). Among other purposes, the CMPA "[p]rovide[s] for a positive policy of labor-management relations including collective bargaining between the District of Columbia government and its employees." D.C. Code § 1–601.02(a)(6).

The CMPA created the Public Employee Relations Board ("Board") "with a mandate to 'issue rules and regulations establishing a labor-management relations program to implement the policy set forth in [the CMPA],'" Hawkins v. Hall, 537 A.2d 571, 574 (D.C. 1988) (citing D.C. Code § 1–618.2 (1987), now codified at D.C. Code § 1–617.02(a)), including provisions for the

15

"resolution of unfair labor practice allegations," D.C. Code § 1–617.02(b)(2); see also D.C. Code §§ 1–605.02(3), 1–605.02(9) (respectively authorizing the Board to "[d]ecide whether unfair labor practices have been committed and issue an appropriate remedial order" and to "[m]ake decisions and take appropriate action on charges of failure to adopt, subscribe, or comply with the internal or national labor organization standards of conduct for labor organizations"). "[U]nder the CMPA, the [Board] has exclusive jurisdiction over disputes involving grievances under a collective bargaining agreement, regardless of whether claims against a union allege a breach of the duty of fair representation or breach of contract." Jackson v. D.C. Dep't of Health, No. 06–1347, 2007 WL 1307891, at *2 (D.D.C. May 3, 2007) (citation omitted).

The plaintiff concedes that she has not filed her claims with the Board, and offers no alternative basis for this Court to exercise jurisdiction over her claims against the Union Defendants. See generally Compl.; Pl.'s Opp'n to Unions' Mot. "Because the [Board] has exclusive jurisdiction over the plaintiff's claim for unfair labor practices, the Court must dismiss the complaint [as to her claim against the Union Defendants] for lack of subject matter jurisdiction." Osekre v. Gage, 698 F. Supp. 2d 209, 212 (D.D.C. 2010) (Walton, J.).

### 2. The Plaintiff's Remaining Allegations of Discrimination

In addition to her unfair labor practice claims, the plaintiff also alleges that the Union Defendants "have an age animus against individuals over the age of 40 years, and a disability animus over individuals with a disability." Compl. ¶ 18. Additionally, the plaintiff has alleged that her removal from the position of Shop Steward by the Union Defendants in January 2015 was "retaliation against [her resulting from her] EEOC complaints filed against [her] employer." Pl.'s Opp'n to Unions' Mot., Ex. A (Charge of Discrimination) at 1.

16

With respect to the plaintiff's age and disability discrimination claims, the plaintiff offers entirely no factual assertions to support these claims in regards to either a specific adverse employment action or a causal link to her age or purported disability. See generally Compl. Therefore, these claims must be dismissed, as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (2009) (citation omitted). With respect to the plaintiff's retaliation claim pursuant to Title VII, the Complaint fails to offer any explanation as to how her removal as Shop Steward by the Union Defendants was related to her prior EEO activity. The only causal connection suggested by the plaintiff is that one or more unnamed employees working for the District were "close friends" with Sabrina Brown, the president of the Union Defendants. See Pl.'s Opp'n to Unions' Mot., Ex. A (Charge of Discrimination) at 1. This conclusory and speculative explanation is insufficient, see Iqbal, 556 U.S. at 678 (2009) (citation omitted), and the Court must therefore dismiss the plaintiff's retaliation claim against the Union Defendants because "[t]he Court cannot infer retaliation from temporal proximity, and [the plaintiff] has provided no direct evidence of retaliation." Dudley, 924 F. Supp. 2d at 181.

### IV.    CONCLUSION

For the reasons stated in this Order, it is hereby

**ORDERED** that the Consent Motion to Dismiss Defendant American Federation of State, County and Municipal Employees, International Union, AFL–CIO from Complaint is **GRANTED**. It is further

**ORDERED** that the Defendants American Federation of State, County, and Municipal Employees, District Council 20 and Local 2401, AFL–CIO's Motion to Dismiss is **GRANTED**. It is further

**ORDERED** that the Defendants the District of Columbia, Office of the Attorney General, and Karl A. Racine's Motion to Dismiss [] is **GRANTED**. It is further

**ORDERED** that the plaintiff's claims are **DISMISSED WITHOUT PREJUDICE**. It is further

**ORDERED** that this case is **CLOSED**.

**SO ORDERED** this 16th day of September, 2016.

REGGIE B. WALTON  
United States District Judge